UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CRAIG JAMES MARR,

     Defendant-Movant,

v.

UNITED STATES OF AMERICA,

     Plaintiff-Respondent.

_____/

Case No. 1:24-cv-978

Honorable Paul L. Maloney

**OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant Craig James Marr ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.     Background**

On May 18, 2021, a grand jury returned an Indictment charging Defendant with: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Indictment, *United States v. Marr*, No. 1:21-cr-101 (W.D. Mich.) (ECF No. 1). Attorney Scott Graham was appointed to represent Defendant in his criminal proceedings.

On August 16, 2021, the Government filed an Information and Notice of Prior Serious Violent Felony Conviction. *See* Information, *id.* (ECF No. 23). This Information set forth that in 2001, Defendant had been convicted of second-degree murder, in violation of Mich. Comp. Laws § 769.317. *See id.* (ECF No. 23, PageID.58). The Information noted that if Defendant were

convicted of Count Two of the Indictment, which charged him with possession with intent to distribute methamphetamine, his prior violent felony conviction would subject him to a mandatory minimum of 10 years and a maximum of life imprisonment. *Id.*

On August 17, 2021, Defendant, through counsel, filed a motion to suppress "evidence seized in the course of a police stop and search on the night between April 27 and 28, 2021, in Lansing, Michigan." *See* Mot. to Suppress, *id.* (ECF No. 25, PageID.60). The Court conducted a hearing regarding the motion on October 8, 2021, and entered an order denying the motion to suppress that same day. *See* Order, *id.* (ECF No. 28).

Ultimately, following a three-day trial, Defendant was convicted of all three counts set forth in the Indictment. *See* Jury Verdict, *id.* (ECF No. 50). With respect to Count Two, the jury concluded that Defendant was responsible for 5 grams or more but less than 50 grams of methamphetamine. *See id.* (ECF No. 50, PageID.319). On February 16, 2022, the Court sentenced Defendant to a total of 180 months' incarceration, consisting of concurrent terms of 120 months for Counts One and Two, and a consecutive term of 60 months for Count Three. *See* J., *id.* (ECF No. 64).

Defendant appealed, challenging the denial of his motion to suppress and the admission of opinion testimony at trial from a Government agent. *See United States v. Marr*, No. 22-1104, 2023 WL 6240105, at *1 (6th Cir. Sept. 26, 2023). Defendant also claimed that the Government presented insufficient evidence for the jury to convict him of possession with intent to distribute methamphetamine and possession of a firearm in furtherance of drug trafficking. *See id.* The United States Court of Appeals for the Sixth Circuit set forth the following summary of the facts underlying Defendant's convictions:

> After serving 20 years in state prison for a second-degree-murder he committed as a teenager, Marr was released on parole in September 2020. Following his release,

3

Marr returned to his hometown of Lansing, Michigan. About seven months later, in April of 2021, a confidential informant ("CI") advised John Cosme, a Lansing police officer, that Marr was selling drugs and was often seen with a firearm. The CI also told Cosme that Marr was on parole, which Cosme verified. After this initial contact from the CI, but before Marr's arrest in this case, Cosme stopped Marr for a traffic violation. During this initial stop, Marr also informed Cosme that he was on parole.

Subsequently, in the late hours of April 27 or the early hours of April 28, 2021, the same CI called Cosme and told him that he had seen Marr with a firearm and methamphetamine. Cosme and at least one other Lansing police officer followed up by traveling in unmarked vehicles to the location provided by the CI. The officers saw Marr get into his car and start driving. "Based on the information" and "the parole history," the officers decided to conduct "a dynamic contact," i.e., block Marr's vehicle so he could not flee. (R. 30, Suppression Hrg. Tr., PageID.106.) Police officers and Michigan State Police troopers effectuated the stop.

A state trooper searched Marr and found a loaded handgun tucked in his waistband. After placing Marr in a patrol car, the trooper asked Marr if he had anything else on him. Marr confessed to having a magazine for a firearm in his pants, which the trooper recovered, and a "little bag of dope." Once Marr was taken to jail, authorities discovered a baggie hidden between layers of his clothing; the baggie contained 21.5 grams of crystal methamphetamine.

*Id.* at *1–2. The Sixth Circuit rejected Defendant's arguments and affirmed his convictions and sentences. *Id.* at *1. Defendant did not petition the United States Supreme Court for a writ of certiorari.

Defendant filed his § 2255 motion (ECF No. 1) and memorandum in support thereof (ECF No. 2) on September 19, 2024. In an order (ECF No. 4) entered on October 18, 2024, the Court directed the Government to file a response to the motion. The Government subsequently moved for an extension of time and an order authorizing release of information subject to attorney-client privilege. (ECF No. 5.) The Court granted that motion on February 10, 2025. (ECF No. 10.) The Government filed an affidavit from attorney Scott Graham (ECF No. 11) on March 20, 2025, and filed its response (ECF No. 14) to the § 2255 motion on March 28, 2025. The Court received Defendant's reply (ECF No. 15) on May 1, 2025.

## II.    Standard of Review

### A.    Merits

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he can demonstrate that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, "Section 2255 does not provide relief for just any alleged error." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

### B.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning

5

as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

### C.    Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## III.    Discussion

Defendant raises the following grounds for relief in his § 2255 motion:

I.    Ineffective assistance of counsel for failing to object to and/or challenge the illegal arrest of Defendant.

II.    Ineffective assistance of counsel for failing to object to the hearsay utilized by the Government's main witness at trial on Confrontation Clause grounds.

III.    Ineffective assistance of counsel for failing to present a defense to persuade the jury that Defendant possessed only a user-level amount of narcotics and not a distributive amount[] as alleged by the Government at trial.

(§ 2255 Mot., ECF No. 1, PageID.4–7.) The Government contends that Defendant's grounds for relief are meritless. (ECF No. 14.)

**A.    Ground I—Ineffective Assistance of Counsel During Suppression Proceedings**

Defendant first contends that attorney Graham was ineffective for "failing to object and/or challenge the illegal arrest of Defendant." (§ 2255 Mot., ECF No. 1, PageID.4.) According to Defendant, counsel should have argued that a warrantless search of Defendant, despite Defendant's parole status, was unreasonable. (*Id.*, PageID.13–14.) Defendant suggests further that counsel should have subpoenaed witnesses to testify at the suppression hearing; namely, Parole Officer Dayton Driver and Police Officer Nancy Hamilton. (Memo. Supp. § 2255 Mot., ECF No. 2, PageID.35.) According to Defendant, had counsel rendered effective assistance, there was a reasonable probability that the courts would have concluded that the stop in question constituted an arrest and not a "*Terry* stop." (*Id.*)

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has noted that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019).

On August 17, 2021, attorney Graham filed a motion to suppress the evidence seized during the "police stop and search on the night between April 27 and 28, 2021, in Lansing, Michigan." *See* Mot., *United States v. Marr*, No. 1:21-cr-101 (W.D. Mich.) (ECF No. 25, PageID.60). In support, counsel argued that: (1) the Government had not provided any records suggesting that

7

Defendant had a parole term that diminished his privacy expectations; and (2) even if Defendant had a diminished expectation of privacy because of his parole, the circumstances for such did not arise in Defendant's case. *See id.* (ECF No. 25, PageID.62). Attorney Graham contended that the CI's tip contained no predictions regarding Defendant's actions, and that officers did not corroborate the CI's tip other than to just conduct brief surveillance and look up the vehicle registered to Defendant. *See id.* (ECF No. 25, PageID.64). Overall, counsel argued, the CI's tip failed to provide reasonable suspicion to stop Defendant. *Id.* (ECF No. 25, PageID.65).

The Court conducted an evidentiary hearing regarding Defendant's motion to suppress on October 8, 2021. *See* Mot. Hr'g Tr., *id.* (ECF No. 30). Lansing Police Officer John Cosme testified at that hearing. Officer Cosme testified that on April 28, 2021, he received a call from one of his CIs who was part of the Lansing Police Department's "special operations division, [the] narcotics division." *Id.* (ECF No. 30, PageID.96). Officer Cosme testified that this CI had provided reliable information to him in the past. *Id.* (ECF No. 30, PageID.97).

Prior to the CI's call on April 28, 2021, the CI had told Officer Cosme that Defendant was "actively participating in the sales of illegal narcotics and often seen with a firearm." *Id.* (ECF No. 30, PageID.97–98). The CI had told Officer Cosme that he had seen Defendant with those items before and that Defendant was on parole. *Id.* (ECF No. 30, PageID.98). The CI specifically mentioned that Defendant was involved in selling crystal meth. *Id.* (ECF No. 30, PageID.99).

Officer Cosme testified that after he received that information from the CI, an analysis verified Defendant's name, criminal history, and parole status. *Id.* (ECF No. 30, PageID.100). He noted that he had previously encountered Defendant during a traffic stop that "happened way before the 28th." *Id.* Officer Cosme testified that Defendant was in a Chevrolet Malibu when that stop occurred. *Id.* (ECF No. 30, PageID.101). Officers located a vehicle registered to Defendant

that matched that description, and the CI also told Officer Cosme that Defendant had a tan Malibu. *Id.* Officer Cosme testified further that Defendant's parole conditions included a condition that Defendant voluntarily consented to searches of his person and property "upon demand by a peace officer or parole officer." *Id.* (ECF No. 30, PageID.102).

Officer Cosme testified that on April 28, 2021, the CI called and told him that Defendant "was in the area, the 300 block of West Cesar Chavez, that he was in possession of a firearm, and possession of crystal methamphetamine." *Id.* (ECF No. 30, PageID.104). The CI told Officer Cosme that he had personally been with Defendant that day, and had seen Defendant with the firearm and narcotics. *Id.* (ECF No. 30, PageID.105). Officer Cosme then contacted his team, and the team drove unmarked vehicles to the area indicated by the CI. *Id.* They conducted surveillance of the area, during which the CI again contacted Officer Cosme and told him that Defendant "was still in the area." *Id.* Surveillance units were able to locate a vehicle believed to be Defendant's, and Defendant was seen getting into that vehicle. *Id.*

Ultimately, Defendant's vehicle was stopped, and state troopers who were assisting Officer Cosme's team contacted and secured Defendant. *Id.* (ECF No. 30, PageID.107). Troopers found a firearm and magazine under Defendant's pants, and they also located crystal methamphetamine. *Id.* After the contraband was found, Officer Cosme contacted the parole agent embedded with the unit, Nancy Hamilton, and told her that Defendant had been found in possession of a firearm and narcotics. *Id.* (ECF No. 30, PageID.107–108). Officer Hamilton "had the authority to place a detainer on [Defendant], and he was transported to Ingham County lockup facility." *Id.* (ECF No. 30, PageID.108).

On cross-examination, attorney Graham asked Officer Cosme about the prior traffic stop during which he encountered Defendant. *Id.* Officer Cosme acknowledged that he did not issue

Defendant a ticket. *Id.* (ECF No. 30, PageID.109). During that stop, Defendant told Officer Cosme that he was on parole. *Id.* (ECF No. 30, PageID.110). Attorney Graham then asked Officer Cosme if it was his policy to search a vehicle if the driver indicated that he or she was on parole. *Id.* Officer Cosme responded, "I search everyone's car if I stop them." *Id.*

Officer Cosme acknowledged that he had not seen Defendant's parole paperwork before the day of the suppression hearing. *Id.* (ECF No. 30, PageID.111). He testified that he thought he had probable cause to stop and search Defendant, and that Defendant just so happened to be in a vehicle at the time. *Id.* (ECF No. 30, PageID.113). At the end of cross-examination, Officer Cosme clarified that when the CI called him on April 28, 2021, the CI told him that he was with Defendant at the time. *Id.* (ECF No. 30, PageID.115). On redirect, Officer Cosme testified that both the call from the CI and the stop of Defendant occurred well within the same hour. *Id.* (ECF No. 30, PageID.116).

After Officer Cosme testified, attorney Graham argued that there was no credible testimony regarding when Defendant's parole status was verified because Officer Cosme "said he didn't contact MDOC until after the stop, and then later said that he contacted and got information that there was a search condition." *Id.* (ECF No. 30, PageID.123). Attorney Graham also argued that "what happens at the time of the search or what is found can't be used to bootstrap the credibility of an informant in this case." *Id.* (ECF No. 30, PageID.125). Ultimately, the Court denied the motion. *Id.* (ECF No. 30, PageID.128).

On appeal, Defendant challenged the denial of his motion to suppress, arguing that Officer Cosme "was not aware of [Defendant's] parole condition before authorities stopped and searched him, so the parole condition did not render their search and seizure reasonable under the Fourth

Amendment." *Marr*, 2023 WL 6240105, at *2. The Sixth Circuit rejected Defendant's argument,

stating:

> Regardless of whether Cosme was aware of the search condition prior to conducting the traffic stop, the district court did not err in denying Marr's motion to suppress. We thus find it unnecessary to address the broader question of whether the existence of the parole condition alone sufficed to justify the search. This is because under the totality of circumstances, both the stop and the search were reasonable under the Fourth Amendment.
>
> "Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). Due to his status as a parolee, Marr's liberty was restricted. And even if Cosme did not know of Marr's search condition, he certainly knew Marr was a parolee. So instead of the typical probable-cause analysis, we employ the totality-of-circumstances approach here. *See United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008) ("[T]he warrant and probable cause requirements generally do not apply to searches of parolees, probationers or their residences."). Under this approach, we "assess[ ], on the one hand, the degree to which" the search intruded upon Marr's privacy "and, on the other, the degree to which [the search was] needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting *Knights*, 534 U.S. at 119).
>
> First consider Michigan's legitimate interests. "[A] State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* at 853 ("[A] State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'") (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998)). Without question, Michigan had an interest in supervising Marr, specifically. To begin, Cosme knew that Marr was a parolee for a homicide. Further, a CI who had (1) completed the Lansing Police Department's credibility protocol, (2) provided the Department with reliable information in the past, (3) provided specific information about Marr that Cosme had corroborated, and (4) twice informed Cosme that he had seen Marr with a firearm and crystal methamphetamine—most recently, on the day of the stop. As Cosme explained, "[b]ased on the information, based on the parole history, we decided to do a dynamic contact, which means blocking the vehicle from having the opportunity to flee." (R. 30, Suppression Hrg. Tr., PageID.106.)
>
> On the other side of the scale, Marr's expectation of privacy was "severely diminished." *Samson*, 547 U.S. at 852. In *Samson*, the Supreme Court noted that California parolees' liberty can be restricted not only by the suspicionless search condition at issue in that case but also in several other ways, including "mandatory

drug tests, restrictions on association with felons or gang members," "mandatory meetings with parole officers," employment updates, limits on travel, and restrictions on the possession of weapons. *Id.* at 851–52. "The extent and reach of these conditions," the Supreme Court explained, "clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone." *Id.* at 852. Marr was subject to similar parole conditions: he had to comply with drug testing as ordered by his parole officer, he could not associate with people with a felony conviction, he had to meet with his parole officer, he could not change employment without permission from his parole officer, he could not travel outside of Michigan without permission, and he could not possess a firearm or use any object as a weapon. Thus, Marr had a "severely diminished expectation[ ] of privacy by virtue of [his] status [as a parolee] alone." *Id.*

On balance, the officers' search of Marr was not an unreasonable search or seizure prohibited by the Fourth Amendment—even if Cosme was unaware of Marr's on-demand search condition.

In resisting this result, Marr suggests that this is a "reverse stalking horse" scenario. In a traditional stalking-horse scenario, police use a parole officer's authority to conduct a search to circumvent the warrant requirement and further their own investigation. *See United States v. Goliday*, 145 F. App'x 502, 505 (6th Cir. 2005) (collecting cases). Marr's argument is not entirely clear, but to the extent he contends that this is a reverse stalking horse scenario because the police (as opposed to the parole agent) conducted the search using Marr's parole conditions it fails.

There was no subterfuge here. As explained, irrespective of whether Cosme knew about the search condition, the record clearly shows that he was aware of Marr's parole status and possessed concerning information from a reliable CI that Marr possessed narcotics and a gun—items which are illegal for parolees to possess. The authorities therefore did not use any type of subterfuge to stop and search Marr and this argument does not undermine our conclusion that the search was reasonable under the totality of the circumstances.

*Marr*, 2023 WL 6240105, at *2–4.

Defendant now faults attorney Graham for failing to "subpoena available [witnesses] or cross examine police officers or provide available evidence" to show that Defendant was illegally arrested. (§ 2255 Mot., ECF No. 1, PageID.13.) Defendant faults counsel for not researching case law regarding when a warrantless search of a parolee is reasonable. (*Id.*) According to Defendant, attorney Graham should have presented testimony from the CI, Defendant's parole officer Dayton Driver, and Parole Officer Nancy Hamilton at the suppression hearing, and that such testimony

would have established the illegality of his arrest. (Memo. Supp. § 2255 Mot., ECF No. 2, PageID.35.)

As an initial matter, although Defendant faults attorney Graham for not calling the individuals mentioned above as witnesses at the suppression hearing, "whether to call a witness and how to conduct a witness['s] testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). Defendant offers nothing but his own speculation that these individuals would have provided testimony establishing the alleged illegality of Defendant's arrest. That speculation alone is insufficient to establish that counsel was ineffective. *See Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted).

In his affidavit, attorney Graham states that the "search issue based on the traffic stop was fully evaluated and presented to this Court and was fully considered by this Court and the court of appeals." (ECF No. 11, PageID.58, ¶ 15.) Attorney Graham is "unaware of any other facts that could have been presented in support of the motion to suppress." (*Id.*, ¶ 16.) This Court agrees with attorney Graham's assessment of the record. The foregoing discussion demonstrates that attorney Graham challenged the credibility of any testimony regarding Officer Cosme's knowledge of Defendant's parole status and challenged the reliability of the CI's tip. The Sixth Circuit rejected Defendant's arguments on appeal, concluding that Officer Cosme was personally

13

aware of Defendant's parole status, even if he had not corroborated it until after the traffic stop, and that the CI's information was sufficiently reliable and credible.

Given the Sixth Circuit's conclusions, Defendant fails to demonstrate, and the Court fails to discern, how any further argument by attorney Graham would have caused both this Court and the Sixth Circuit to conclude that the traffic stop was not a permissible *Terry* stop and instead was an illegal arrest. Defendant simply fails to "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different." *See Kimmelman*, 477 U.S. at 375. Accordingly, Defendant is not entitled to relief with respect to habeas ground I.

## B.    Ground II—Ineffective Assistance Regarding Hearsay

Next, Defendant faults counsel for "failing to object to the hearsay utilized by the [G]overnment's main witness at trial on [C]onfrontation [C]lause grounds." (§ 2255 Mot., ECF No. 1, PageID.5.) Specifically, Defendant believes that attorney Graham should have objected to Officer Cosme's testimony during the suppression hearing regarding the CI's out-of-court statements on the basis that those statements were testimonial and used for the truth of the matter asserted. (Memo. Supp. § 2255 Mot., ECF No. 2, PageID.37–38.) Defendant argues further that Officer Robert Forbis' testimony at trial was presented in violation of Defendant's Confrontation Clause rights because his testimony regarding the CI's statements to Officer Cosme also constituted inadmissible hearsay. (*Id.*, PageID.38.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the

admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Not every out-of-court statement at trial, however, implicates the Confrontation Clause. As the Supreme Court stated in *Crawford*:

> The text of the Confrontation Clause . . . applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Id.* at 51. The *Crawford* Court had no need to decide whether the Confrontation Clause applies to nontestimonial statements, though the Court suggested, in *dicta*, that the clause does not apply to such statements. Subsequently, the Supreme Court considered the question left open in *Crawford* and explicitly decided that the Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823–24 (2006).

First, Defendant's contention that his Confrontation Clause rights were violated at the suppression hearing is wholly meritless. The Supreme Court has suggested that the Confrontation Clause does not apply to pretrial hearings, repeatedly explaining that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725 (1968); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987). Specifically, the Supreme Court has concluded "that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." *United States v. Raddatz*, 447 U.S. 667, 679 (1980). Thus, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *Id.* As the Sixth Circuit has stated, "the Supreme Court has rejected Confrontation Clause

15

challenges to the use of incompetent testimony during suppression hearings." *United States v. Sissler*, No. 91-2113, 1992 WL 126974, at *2 (6th Cir. June 10, 1992) (citing cases); *see also United States v. Davis*, 361 F. App'x 632, 636 (6th Cir. 2010) (suggesting that the Confrontation Clause does not apply to suppression hearings). Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). For the reasons set forth above, any Confrontation Clause challenge to Officer Cosme's testimony at the suppression hearing would have been wholly futile. Accordingly, Defendant is not entitled to relief with respect to this assertion of ineffective assistance.

With respect to Defendant's contention regarding trial testimony, at trial, Lansing Police Department Officer Robert Forbis testified for the Government. Officer Forbis testified that during the relevant time period, he was on a special assignment to the Violent Crime Impact Team. *See* Trial Tr. II, *United States v. Marr*, No. 1:21-cr-101 (W.D. Mich.) (ECF No. 71, PageID.564). At the beginning of direct examination, the Government asked Officer Forbis: "Now, a confidential informant had provided a tip that the defendant had a pistol and methamphetamine; is that right?" *Id.* Officer Forbis responded, "Yes." *Id.* Officer Forbis testified further that the CI had told officers that Defendant "was located at a particular apartment building." *Id.* (ECF No. 71, PageID.565).

Upon review of the record, the Court agrees with the Government that Officer Forbis's testimony regarding what information the CI provided to law enforcement was not offered for the truth of the matter asserted. The Sixth Circuit has held that "background information that explains how law enforcement came to be involved might not be hearsay because it is offered not for the truth of the matter asserted, but rather to show why the officers acted as they did." *United States*

*v. Nelson*, 725 F.3d 615, 620 (6th Cir. 2013). With respect to CIs, the Sixth Circuit has recognized

that "statements by CIs are generally testimonial in character." *See United States v. Powers*, 500

F.3d 500, 508 (6th Cir. 2007). In reaching that generalization, the Sixth Circuit has noted:

> Tips provided by confidential informants are knowingly and purposely made to
> authorities, accuse someone of a crime, and often are used against the accused at
> trial. The very fact that the informant is confidential-i.e., that not even his identity
> is disclosed to the defendant-heightens the dangers involved in allowing a declarant
> to bear testimony without confrontation. The allowance of anonymous accusations
> of crime without any opportunity for cross-examination would make a mockery of
> the Confrontation Clause.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

However, "[t]his is not to say that every CI's statement offered through a police officer at

trial amounts to a Confrontation Clause violation." *Powers*, 500 F.3d at 508. For example, in

*Cromer*, the Sixth Circuit held that the defendant's rights under the Confrontation Clause were not

violated by the admission of testimony that set forth background as to why law enforcement had

begun investigating the defendant. *Cromer*, 389 F.3d at 676. Notably, in *Cromer*, the officer's

testimony "at least arguably did not even put before the jury any statements made by the CI." *Id.*

Building upon *Cromer*, the Sixth Circuit has also rejected a Confrontation Clause challenge

to an officer's testimony that included statements regarding why law enforcement was

investigating the defendant, as well as statements regarding that a CI knew the defendant and where

he lived, concluding that such testimony was not offered for the truth of the matter asserted. *See*

*United States v. Reynolds*, 684 F. App'x 510, 514–16 (6th Cir. 2017). On the other hand, the Sixth

Circuit has held that an officer's testimony at trial that a CI notified a narcotics task force that the

defendant "was trafficking in significant quantities of cocaine" and "was a well-known cocaine

dealer," and that this information was used to trigger a sting operation, violated the defendant's

rights under the Confrontation Clause because details about the defendant's past activities "were

17

not necessary to set the context of the sting operation for the jury." *United States v. Powers*, 500 F.3d 500, 503, 504, 510 (6th Cir. 2007).

Arguably, Officer Forbis' testimony that the CI had provided a tip that Defendant had been seen in possession of a pistol and methamphetamine presents a close question. While this information provided the background for why law enforcement officials investigated and ultimately arrested Defendant, the CI's tip was the impetus for beginning the investigation into Defendant's activities. Nevertheless, even if Officer Forbis's testimony regarding the CI's statements were testimonial in nature and, therefore, their admission violated Defendant's Confrontation Clause rights, Defendant has not demonstrated that he was prejudiced in any way by counsel's failure to raise a Confrontation Clause challenge at trial. Even setting aside Officer Forbis's testimony regarding the CI, the Government presented overwhelming evidence that Defendant possessed a quantity of methamphetamine equivalent to an amount usually intended for distribution, that he possessed a firearm despite his status as a felon, and that he possessed the firearm in connection with drug trafficking. In light of that, Defendant fails to show, and the Court fails to discern, how any Confrontation Clause objection raised by attorney Graham would have changed the outcome of Defendant's trial in any way. Defendant, therefore, is not entitled to relief with respect to habeas ground II.

## C.    Ground III—Ineffective Assistance for Failing to Present a Defense

As his third and final ground for relief, Defendant faults counsel for "failing to present a defense to persuade the jury that Defendant possessed only a user-level amount of narcotics and not a distributive amount[] as alleged by the government at trial." (§ 2255 Mot., ECF No. 1, PageID.7.) In support of his claim, Defendant contends that

> just because the government would equate purity and quantities over a few grams as dealer amounts . . . doesn't make it so today because according to the law and media today providing that methamphetamine is not only prevalent throughout the

18

country, but almost 100% pure in most cases, making purchasing quantities of an ounce or less as common.

(Mem. Supp. § 2254 Mot., ECF No. 2, PageID.38–39.) Defendant suggests that had counsel presented this defense, he would have been acquitted of Count Two of the Indictment. (*Id.*, PageID.39.)

In the sworn declaration he has attached to his § 2255 motion, Defendant avers that counsel should have called the CI to testify that if he had seen Defendant with drugs, that Defendant was using them, not selling them. (ECF No. 1-1, PageID.28.) Notably, however, given that the CI was the individual who told Officer Cosme that Defendant had been selling drugs, any testimony otherwise by the CI would have placed the CI's credibility severely in question. In any event, Defendant offers nothing but his own speculation that the CI would have testified in his favor at trial, and as discussed *supra*, that speculation is insufficient to establish an ineffective assistance of counsel claim. *See Tinsley*, 399 F.3d at 810; *Ashimi*, 932 F.2d at 650; *see also United States v. Tilghman*, No. 07-cr-138-KSF, 2013 WL 4735578, at *10 (E.D. Ky. Sept. 3, 2013) (noting that "[w]hen a defendant claims that his attorney failed to call a witness at trial, he must '[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense'" (quoting *Talley v. United States*, No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006))).

Attorney Graham has also addressed Defendant's assertions in his affidavit. Attorney Graham "recognized before trial that one of the issues in the case was whether the 21.5 grams of methamphetamine that [Defendant] possessed was a 'distribution' amount or could have been a 'user' amount." (ECF No. 11, PageID.59, ¶ 17.) Attorney Graham consulted with at least two potential experts about this issue, but "[n]either expert had an opinion consistent with [attorney

Graham's] theory about possible use." (*Id.*, ¶¶ 19–21.) Attorney Graham also researched cases and conferred with other attorneys regarding their experiences with the issue. (*Id.*, ¶¶ 22–23.) At trial, attorney Graham "tried to present the theory that the amount of drugs was just as likely for use as it was for distribution through the testimony of government witnesses." (*Id.*, ¶ 24.) He also "requested a jury instruction on the lesser included offense of possession of methamphetamine." (*Id.*, ¶ 26.) However, the jury ultimately rejected the defense's user-level theory and convicted Defendant of possession with intent to distribute.

Attorney Graham also avers that prior to trial, the Government advised him that "it intended to have a police officer opine that 21.5 grams of methamphetamine is consistent with distribution and not mere use." (*Id.*, PageID.60, ¶ 33.) Attorney Graham filed a motion in limine to prevent this opinion testimony, but the motion was denied by the Court. (*Id.*, ¶ 34–35.) Attorney Graham challenged the testimony during cross-examination, and challenged its admission on direct appeal. (*Id.*, ¶ 36–37.)

The record before the Court entirely corroborates attorney Graham's statements. On October 22, 2021, attorney Graham did file a motion in limine seeking to exclude the testimony noted above, arguing that such testimony "certainly falls within the realm of common sense and the ken of most people who would be in the jury pool." *See* Mot., *United States v. Marr*, No. 1:21-cr-101 (W.D. Mich.) (ECF No. 38, PageID.207). The Court, however, denied that motion. *See* Order, *id.* (ECF No. 44).

At trial, the Government presented testimony from DEA Special Agent Melissa Kazik. Special Agent Kazik testified that based upon her training and experience, it was common for methamphetamine users to typically purchase a gram at a time. *See* Trial Tr., II, *id.* (ECF No. 71, PageID.642). She noted that the user "could potentially make that gram last one to two days, and

use that one gram amount . . . several times a day." (*Id.*) Special Agent Kazik testified that the 21.5 grams of 99% pure methamphetamine that was found in Defendant's possession was a "larger distribution quantity" based on her experience. *Id.* (ECF No. 71, PageID.643). She testified that she would not expect a methamphetamine user who did not intend to distribute to be in possession of that amount. *Id.* When asked why, Special Agent Kazik stated:

> There are multiple reasons. Somebody who is a user is basically driven day-to-day by their addiction, so each day they go out and purchase their user amount or every couple days they go and purchase user amount, multiple reasons, typical users don't maintain a job, they struggle to find a financial source to pay for their drug use every single day, so every single day they are looking for money to even purchase a small amount of drug to use just to fuel their addiction day-to-day. Typical users also don't purchase in bulk such as over 20 grams of methamphetamine, their fear of being robbed, a lot of times by other users or people in their homes, and the typical methamphetamine or drug user in general has a really hard time with self-control. And once again, like I mentioned before, their addiction really fuels their activities day to day. A lot of the time a methamphetamine or drug user cannot even maintain this amount of drug at one time, and also the company they keep, being surrounded by other users, they might get robbed, it might get stolen.

*Id.* (ECF No. 71, PageID.643–644). Special Agent Kazik testified that she had never been involved in an investigation where a user had, for personal use only, "a quantity of 99 percent pure methamphetamine comparable to the 21.5 grams involved in this case." *Id.* (ECF No. 71, PageID.645). Special Agent Kazik testified further that the sheer amount involved in Defendant's case convinced her that it was for distribution purposes, despite the fact that Defendant may not have had a cell phone, was not in possession of a scale at the time of his arrest, and did not have any plastic baggies or cash on his person when arrested. *Id.* (ECF No. 71, PageID.651–653).

On cross-examination, attorney Graham was able to have Special Agent Kazik admit that she had never "testified in a court as an expert witness as [she was]" that day. *Id.* (ECF No. 71, PageID.655). She also admitted that a user could consume more than a gram of methamphetamine per day. *Id.* (ECF No. 71, PageID.660). Special Agent Kazik noted further that in her experience,

drug dealers are often found with cell phones, scales, packaging materials, ledgers, and rental cars. *Id.* (ECF No. 71, PageID.661–663).

Moreover, attorney Graham is entirely correct that the Court instructed the jury regarding the lesser-included offense of possession of methamphetamine. *Id.* (ECF No. 71, PageID.711). The Court instructed the jury that if it found Defendant not guilty of possession with intent to distribute, it must consider the lesser charge. *Id.* (ECF No. 71, PageID.711–712). During jury deliberations, the jury sent a note to the Court indicating that it could not reach a unanimous agreement on Count 2-A, and asking if it was required to check the not guilty box. *Id.* (ECF No. 71, PageID.727). After consulting with counsel, the Court called the jury in and provided the following further instruction:

> I'm going to ask you to return to the jury room and deliberate further on Count 2-A. I realize that you are having some difficulty reaching unanimous agreement, but that is not unusual, and sometimes after further discussion, jurors are able to work out their differences and agree. Please keep in mind how very important it is for you to reach unanimous agreement. If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented or that the next 12 jurors will be any more conscientious and impartial than you are.

> Let me remind you that it is your duty as jurors to talk with each other about the case, to listen carefully and respectfully to each other's views, and to keep an open mind as you listen to what your fellow jurors have to say.

> And let me remind you that it is your duty to make every reasonable effort you can to reach unanimous agreement. Each of you, whether you are in the majority or the minority, ought to seriously reconsider your position in light of the fact that other jurors who are just as conscientious and impartial as you are, have come to a different conclusion. Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt, should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt. None of you should hesitate to change your mind, if after reconsidering things, you are convinced that other jurors are right, and that your original position was wrong. But remember this: Do not ever change your mind just because other jurors see things differently or just to get the case over with. As I told you before, in the end, your vote must be exactly that, your own vote. As important

22

> as it is for you to reach unanimous agreement, it is just as important you do so honestly and in good conscience.
>
> What I have just said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry. I remind you that any verdict of the jury must be unanimous.

*Id.* (ECF No. 71, PageID.732–734). Ultimately, as set forth above, the jury convicted Defendant of all three charges set forth in the Indictment, including possession with intent to distribute.

Here, the record from Defendant's criminal proceedings, as well as attorney Graham's affidavit, refute Defendant's suggestion that counsel was ineffective for failing to pursue a user-level defense. On the contrary, the record is clear that attorney Graham did present such a defense during trial. As set forth above, Defendant believes that counsel should have called the CI to refute Special Agent Kazik's opinion testimony, but Defendant provides nothing but his own speculation to suggest that the CI would have been available and would have testified in his favor. Defendant also suggests that counsel should have "effectively" cross-examined Special Agent Kazik. (ECF No. 15, PageID.79.) As set forth above, attorney Graham did effectively cross-examine Kazik, and Defendant fails to explain how further cross-examination would have been beneficial to his defense.

Ultimately, Defendant has failed to demonstrate that attorney Graham made an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Moreover, Defendant has not demonstrated prejudice, at it is patently clear that despite attorney Graham presenting evidence and arguing that Defendant possessed the 21.5 grams of methamphetamine for his personal use, the jury rejected that argument

and unanimously concluded that Defendant had intended to distribute that amount. Defendant, therefore, is not entitled to relief with respect to habeas ground III.[1]

In sum, the record before the Court supports a conclusion that all of Defendant's grounds for relief are meritless, and there is no need for the Court to conduct an evidentiary hearing. Accordingly, Defendant's § 2255 motion (ECF No. 1) will be denied.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*,

---

[1] Within ground III, Defendant also vaguely mentions that counsel "unprofessionally failed to investigate or present the strongest issues available to [Defendant] for his direct appeal and failed to preserve viable issues for collateral review." (§ 2255 Mot., ECF No. 1, PageID.16.) Defendant, however, fails to explain what issues he believes counsel should have raised on direct appeal. Defendant's conclusory allegation is insufficient to justify federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (noting that conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012) (citing *Workman* and affirming the denial of habeas relief for conclusory claims).

Defendant also mentions that counsel "labored under [an] actual conflict of interest," and that counsel "owed a 'duty' other than to [him]." (§ 2255 Mot., ECF No. 1, PageID.16.) Defendant provides no facts to support this alleged conflict of interest. Attorney Graham has averred that he did not represent anyone with interests contrary to Defendant's. (ECF No. 11, PageID.60, ¶ 40.) By failing to point to specific instances suggesting an actual conflict or impairment of his interests, *see McElrath v. Simpson*, 595 F.3d 624, 624–25 (6th Cir. 2010) (citations omitted), Defendant fails to show that he is entitled to relief premised upon any alleged conflict of interest.

529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## V.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).

Dated:   May 29, 2025                        /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge

25